Harper, Chancellor.
Benjamin Chaplin, the elder, of St. Helena Parish, by his will,-dated in 1166, devised the tract of land which is in *182 question in this suit, in manner following : “ I give and bequeath to my son John all the rest of my tract of land where I now live, be it more or less, to him and his heirs, for ever; bul if he should die without lawful heir, or before he is twenty-one years old, then ,tis my my will the said land should go to and descend to my son William, and to his heirs for ever.” John Chaplin, the devisee, by his will, dated in 1716, devised the same land as follows — “I give and bequeath to my dear and loving son, John Chaplin, my tract of land on Port Royal Island, lying on Jericho Creek; but if he should die without an heir lawfully begotten by him, then I will and desire that the said tract of land be given to my brother, William Chaplin.” John Chaplin, the testator, died soon after the execution of his will, leaving John Chaplin, his son and only child, who entered on the land, and died in 1826, leaving no issue and never having been married. William Chaplin, to whom the land is devised over by the will of the testator, John, died many years ago intestate and without issue, before the Act of 1191, abolishing the right of primogeniture, leaving, at his death, an elder brother, Benjamin, and a sister, Ann Adams. The complainants are the descendants of Ann Adams, and claim a moiety of the land, either as heirs and next of kin of William Chaplin, the devisee over, by the will of John Chaplin, if that limitation shall be held to have been good; or, as heirs and next of kin of the. testator John Chaplin, if the inversion or possibility of reverter, was in ^™1 i charging that John Chaplin,* the younger, either took a mere life estate, or a fee simple conditional, which was determined by his death, without issue, in 1826, and that those must take who answer the character of heirs, at the time of the determination of the estate, or the happening of the contingency on which the limitation over was to take effect. In 1806 the land was sold under judgment and execution, as the property of John Chaplin, the younger, and purchased by Benjamin Chaplin, the brother of William and the testator John, to whom the sheriff executed titles. In 1815, the said Benjamin Chaplin conveyed the land in trust, for his daughters, who are defendants to the suit. The defendant, Benjamin S. Chaplin, son of the said Benjamin Chaplin, disclaims all interest in the land.
The first question which arises in the case, is, what'estate in the land, John Chaplin, the elder, took under the will of his father Benjamin Chaplin, and consequently, whether his son, John Chaplin the younger, took as a purchaser under his will, or by virtue of the limitation of his grandfather’s will. A preliminary objection was made, that the will of Benjamin Chaplin appears to have been attested but by two subscribing witnesses, and consequently was not duly executed to pass real estate. The name of Martha Barnwell first appears subscribed as a witness; then follow the letters E. E., and then the name of John Barnwell. The certified copy of the will was admitted in evidence, I suppose, on the proof which appears to have been made of it before a commissioner, to whom a dedimus for that purpose was issued by the Governor. The witness, John Barnwell, declares that he subscribed as 'a witness, together with Martha Barnwell and Elizabeth Ellis. If Elizabeth Ellis subscribed by merely making her initials, I suppose that this was sufficient, under the authorities of Harrison v. Harrison, 8 Ves. 185, and Addy v. Grix, *183 8 Ib. 504, which determine that the making of a mark is sufficient signing by a witness.
Then, as to the estate devised by the will. It was argued, that though the devise to John is to him and his heirs, for ever, yet being limited over on the event of his *dying without lawful heir, to his brother, who might be his heir, this is equivalent to a limitation over on the event of his dying without issue, and restricts the preceding words, so that it would make it an estate tail in England, or a fee simple conditional in this country. That being a fee simple conditional, John Chaplin, the younger, took nothing from his father’s will, but per formam doni, as heir of limitation, under the will of his grandfather, and the .condition being once performed, by John, the elder’s, having issue, the heir to whom the estate descended might alienate and bar the reverter, without any necessity for his having issue, and that the levy and sale by the sheriff, being the act of law, was equivalent to an alienation by the heir himself. There is no doubt but if lands be given to a man and his heirs, and limited over on the event of his dying without issue, or heirs of his body generally, that will restrict the effect of the preceding words, and make it' an estate tail, or fee simple conditional. The limitation over after an indefinite failure of issue, sufficiently indicates the intention to give an estate tail, with a remainder expectant on its determination. But the devise over, in this case, is, “ If he should die without lawful issue, or before he is twenty-one years old.” I am satisfied, that here “or” is to be construed “and,” and consequently, that the limitation over is not after an indefinite failure of issue, but restricted to the event of the devisee’s dying without issue under the age of twenty-one, and is, therefore, a good executory devise, after the gift of the estate in fee-simple. There are several cases precisely in point, and they seem to me founded on good reason, to effect the testator’s intention. They go upon this, that it cannot be supposed to have been the testator’s intention, in the event of the devisee’s dying under twenty-one, but leaving issue, to give the estate away from the issue ; yet this would be the effect of construing the words disjunctively, making an executory devise dependent solely on the event of the first devisee’s dying under twenty-one, and a limitation over after an estate tail. Lord Hardwicke, in Brownsword v. Edwards, 1 Ves. 249, refers to cases in Croke, deciding the precise point; and to the same effect are the cases of Fairfield v. Morgan, 2 Bos. & Pull. New Rep. 38, and Eastman v. Baker, 1 Taunt. 174. There are other cases to the same effect. I am satisfied that under the will of his father, John Chaplin, the elder, took an absolute estate in fee simple, subject only to be divested on an event which never happened.
We are next to consider the devise by the will of John Chaplin, the elder. The devise, in the first instance is to John Chaplin, the younger, without words of inheritance or perpetuity, which, in England, would give but an estate for life. The estate is limited over, however, to the brother of the testator, if the devisee should die “ without an heir lawfully begotten by him.” This is equivalent to dying without heirs of his body, and according to the decision in Forth v. Chapman, 1 Pr. Wms. 663, which has been followed ever since, this is sufficient to enlarge by implication, the preceding estate for life, into an estate tail. The same' implication, will, I think, in this country make it a fee simple conditional. *184 It is clear, that the limitation over to the testator’s brother, William Chaplin, was too remote, and void as an executory devise. In the case of Bailey v. Seabrook, decided by me at Charleston, I considered the question whether a remainder could be limited after a fee conditional, and determined that it could not. I refer to that case for the reasons of my opinion. The condition not having been performed, the devisee never having had issue, the estate is therefore supposed, on the death of John Chaplin, the younger, in 1826, to have reverted to the right heirs of John Chaplin, the elder. The question is, who are those heirs ? At the death of John Chaplin, the elder, his son, John, was his heir-at-law, and the right of possibility of reverter, which his father had in the land, is supposed to have descended to him. On the part of the complainants, it was argued that those must take who answered the character of heirs of John Chaplin, the elder, at the time the estate of John Chaplin the younger determined; according to the rule laid down by Cruise, in his Treatise on Real Property, 3 vol. 412, tit. xxix., chap. iv. 2, “that where a person en^led to *an estate in remainder or reversion, expectant on a freehold estate, dies during the continuance of the particular estate, the remainder or reversion does not descend to his heir; because he never had a seisin to render him the stock or root of an inheritance; but it will descend to the person who is heir to the first purchaser of such remainder or reversion, at the time when it comes into possession.” “Thus it was laid down by the Court of King’s Bench, in 34 Eliz., that of a reversion or remainder expectant on an estate for life, or in tail, there, he who claims the reversion as heir, ought to make himself heir to him who made the gift or lease, if the reversion or remainder descend from him; or, if a man purchase such reversion or remainder, he who claims as heir, ought to make himself heir to the first purchaser.” The doctrine is very fully illustrated by Cruise, in the chapter referred to, and I have little doubt is applicable to the present case. Our act of distributions has so far altered the English law, that actual seisin is no longer necessary to enable one who has a present title to an estate, to become the stock or root of inheritance. It provides for distribution, “when any person possessed of, interested in, or entitled to a real estate, in his own right in fee simple,” shall die intestate. This, I suppose, would be held to apply to a reversion or remainder, after an estate for life, or an estate tail, if such were allowed in this country, because such a remainder or reversion is an estate of fee simple. But the authorities are, that the right of reverter after a foe simple conditional, is no estate in the land, but a mere possibility, and therefore it is, no remainder can be limited after the preceding fee. This right then, I suppose, is not affected by the act, but must go as at common law, to the person who can make himself heir to the grantor of the fee conditional, when that estate determines. The complainants and defendants, together, were such heirs, by virtue of our statute abolishing the right of primogeniture, being nephews or nieces, and next of kin of John Chaplin the elder. An heir is the creature of the law, and there can be but one rule of succession.
This view of the case would seem to entitle the complainants* equally with the defendants, to a moiety of the land. But it was further argued, on the part of the defendants, that although by the words of the will of John Chaplin, the elder, only a fee simple conditional was *185 given, yet by bis death the right of reverter, which would have remained in him if he had conveyed in his life time, descended or accrued to his son, who was his heir-at-law. That having thus the conditional fee, and the ulterior right to the fee absolute, the lesser estate merged in the greater, and his estate was a fee simple absolute. This is a subject of considerable difficulty, and I have not found the authorities so clear as could be wished. I have come to the conclusion, however, that this is a correct view of the case, and that John Chaplin, the younger, had an absolute fee simple. The doctrine is expressly laid down by Cruise, 1st vol. 92: “ It has been stated that whenever a particular estate in land vests in the person who has the fee simple of the same land, such particular estate is immediately drowned or merged in it. In consequence of this principle, if an estate had been given before the statute de donis, to A, and the heirs of his body, it would have merged, if the fee simple was limited to A by the same conveyance, or come to him afterwards.” So, in Preston's conveyancing, 3d vol. 258, it is said, that “determinable fees, qualified fees, and conditional fees, will merge in the fee simple, or in any fee of the same or a larger extent.” Neither of these authors refer to any express authority in support of their positions; they are their own inferences from acknowledged principles. There is no doubt of the general principle, that a person having a particular estate, and af-terwards acquiring a greater estate, or the fee, the lesser estate is merged in the greater. The difficulty arises from what is said concerning the nature of the right which remains in the donor of a conditional fee simple — that it is no estate or interest, but a mere possibility, which cannot be granted or assigned. Co. Lit. 18 a. Lord Coke says, that “he who hath a fee conditional or qualified, hath as ample and great an estate, as he that hath a fee simple absolute,” and there cannot be two fees simple in the same land. Yet, perhaps, the difficulty is rather verbal than substantial. Lord Coke says, in the same *page, there cannot be two fees simple absolute in the same land. He adds, “and yet in several persons, by act in law, a reversion may be in fee simple in one, and a fee simple determinable in another, by matter esc post facto as if a gift in tail be made to a villein, and the lord enter, the lord hath a fee simple qualified, and the donor, a reversion in fee. But if the lord enfeoff the donor, now both fee simples are united, and he hath but one fee simple in him.” This seems a plain instance of merger. He explains further, that one fee'simple cannot be made to depend upon another, by the grant of the party. Here, it was the act of the law casting the right of reverter on John Chaplin, the younger, which merged the estate given by the will. Or, rather, I think John Chaplin, the younger, must be regarded as in by descent, and taking nothing by .the will.
Justice Blackstone, 2 Com. 178, puts the doctrine of merger on the footing of a virtual or implied surrender or release of the inferior estate : “In the common cases of merger of estates for life or years, by uniting with the inheritance, the particular tenant hath the sole interest in him, and hath full power to defeat, destroy or surrender them to him that hath the reversion; therefore, when such an estate unites with the reversion in fee, the law considers it in the light of a virtual surrender of the inferior estate.” If the superior estate be released or conveyed, to the tenant of the particular estate, the same effect takes place : the party is presumed *186 to surrender to himself. Now the possibility which remains in the donor, after the grant of a fee simple conditional, is, certainly, in its nature, capable of being- surrendered or released, though not of being granted or assigned. As is said by Lord Hardwicke, in Wright v. Wright, 1 Ves. 411, in reference to the case before him, “ This is still, in notion of law, a possibility; which, though the law will not permit to be granted or devised, still it may be released, as all sorts of contingencies may, to the owner of the land.” If a party grant a fee conditional, and by the same deed limit the remainder to the donor, I suppose this is" in effect a grant of the absolute fee simple, though the limitation of the remainder to another would have been void. It is a grant of the fee conditional, *ai)d a release of the possibility of reverter. I suppose it cannot be doubted, but that if John Chaplin, the elder, had conveyed a fee simple conditional in this land, to his son, by deed, in his life time, and the son had reconveyed to his father, the father would have had an absolute fee simple, according to the authority cited from Coke. This would have been a merger. So, if after conveying to his son by deed, the father had released to him his possibility of reverter, I suppose it can be as little doubted that the son would have had an absolute fee simple. But I do not perceive that it can make any difference, that, instead of taking by the release of his father, the same right of reverter was cast upon him by the operation of law.
I said the same right was cast upon him by operation of law ; for such, I think, must be the conclusion. When Cruise, in a passage before cited, says, that “ where a person entitled to an estate, in remainder or reversion, expectant on a freehold estate, dies during the continuance of the particular estate, the remainder or reversion does not descend to his heir,” it is plain, from the sequal of the chapter, that his worsts must be taken in a qualified sense. He means that it does not descend to and vest in the heir, so as to make him a new stock of inheritance, and capable of transmitting to his heir; but that the person who takes after the determination of the particular estate, must take as the heir of the first purchaser. The latter part of the chapter is employed in showing, that when the heir of the first purchaser of the remainder or reversion, exercises an act of ownership over it, he thereby constitutes himself a new stock of inheritance, and capable of transmitting. He cites particularly the case of Stringer v. New, 9 Mod. 363, where a person, who was tenant for life, with remainder in fee, after estates tail to the right heirs of his father, whose heir he was, conveyed the estate to trustees for payment of his debts ; this was held to be such an act of ownership as made him a new stock of inheritance. Lord Hardwicke says, speaking of the lease and release, “It likewise passed the reversion in fee; for, as he was right heir of his father, he had a reversion to grant; though it would descend to ^ ke*rs of his father, without any such *alteration.” It was never doubted, I imagine, if a person grants an estate tail, with reversion to himself, and dies, his heir at law may grant or release the/ reversion; and so any intermediate heir, if there should be any before the termination of the estate tail. Preston says expressly, after speaking of fees determinable, “ On these instances, and indeed, on all limitations which can be ranked under this class, it is observable that the reversion or remainder expectant on these estates, or the possibility of reversion, *187 must remain in some person ; and that a release or other proper assurance from that person, will give to this estate the quality of a simple and absolute fee.”—1 Preston on Estates, 440, 441. If this fee conditional had been given to another person, by the will of John Chaplin, the elder, it would hardly have been doubted but that his son and heir-at-law might have released the possibility of reversion. He could not release to himself, however, and therefore it is that the law operates a merger of his estate. It adds some' strength to these views, that it is only by construction from the words of the statute de donis, that estates tail are exempted from being liable to merge in the fee when the tenant in tail in possession is also entitled to the reversion. 1 Cruise, 92; 2 Blac. Com. 177, 178; 3 Preston’s Conveyancing, 342. It is in favor of the issue, that an estate tail is privileged from merger, and therefore its exemption continues only so long as the privileges of the statute in favor of the issue are annexed, to that estate. If therefore, the right of the issue be barred, as by a fine, the estate tail will merge in the reversion. 3 Prest. Con. 344, 345, et seq.
John Chaplin, the younger, according to the views taken of the case, having had a fee simple absolute, the sale and conveyance of his estate transferred all his right to Benjamin Chaplin, the father of the defendants. It follows that the complainants have no right in the land.
It is therefore ordered and decreed, that the bill be dismissed.
From this decree the plaintiffs appealed, and moved that it be reversed, and that partition of the lands in dispute, and an account of the rents and profits, be awarded to them, ^conformably to the prayer of their bill, on the following grounds :
1. That an estate is never implied by construction of the words of a will, when such construction would defeat the intention of the testator, and lead to the entire destruction of his will: That to imply a fee simple conditional in John Chaplin, the younger, would if the character and incidents of that estate be such as are assumed by the decree, not only defeat the limitation over to William Chaplin, but render the will, even as to John Chaplin, the younger, a mere nullity; and, therefore, either such estate ought not to have been implied, but the interest of John Chaplin, the younger, should have been confined to an estate for life, and the limitation over to William Chaplin adjudged good by way of remainder; or, if the English rule relative to the implying of estates tail, be adopted and applied to fees simple conditional, then the foundation of that rule ought also to be adopted, and the fee simple conditional of John Chaplin, the younger, have been adjudged a particular estate, and capable of supporting the limitation over to William Chaplin, as a contingent remainder.
2. That if the limitation over to William Chaplin be considered an executory devise, or conditional limitation, it is not too remote, being by direct implication from the words of the will, restricted to take effect upon the contingency of John Chaplin, the younger, dying “without an heir lawfully begotten him,” living at the period of his own decease.
3. That all possibilities accompanied with an interest which are de-scendible, are also deviseable; and, therefore, the possibility of reverter in John Chaplin, being accompanied with an interest in the fee, was capable of being devised to his brother, William Chaplin.
These grounds were elaborately argued by Bailey £ Peuigru, for the appellants,
who cited and commented on the following authorities Beclon v. Bedon, 2 Bailey, 231 ; 6 Cruise, tit. 38, chap. 12 ; Porter v. Bradley, 3 Terni Rep. 1 43 ; Forth t~. Chapman, 1 Pr. Wms. 663; Reed v. Sue]]; 2 Atk. 646; Fearne (Butler's Ed.) 471; 7 T. R. ~20; 1 H. Black. 30; 1 Cruise, 70; Pearne, 561; 7 Oranch, 469; 3 Yes. & Beames, 69 ; Co. Lit. n. 338 (a); 2 Black. Corn. 177; Fearne, 366; 3 T. R. 88 ; Bracton, 19; 1 Coke's Rep. 66 ; Plunket v. Holmes, Lev. 11 ; 9 Mod. 147 ; 3 Saunders, 382 (a) note 1; 2 Wilson, 29.
GrisnJce, contra,
referred to and commented on the following authorities; Plow. 242; 3 Preston, 492; 5 Jacob Law Die. 444; 2 Oon. Rep. 94; 3 Black. Corn. 30; 2 Prest. 472; 11 Yin. 486, 6 case; Cruger v. Heyward, 2 ~q. Rep. 112;
4. That if the limitation over to William Chaplin be void one very ground, yet John Chaplin, the yonliger, had never any alienable estate; because he never, as tenant of a fee simple conditional, acquired the right of alienation by the birth of issue ; and the reverter, or possibility of re-verter, being a contingent interest, did not descend upon him, but vested in such persons as were heirs-at-law of John Chaplin, the *Lesta tor, at the time when the contingency happened, and the estate sprung into existence.
5. That the complainants being heirs-at-law of the said testator to the extent of one moiety of his estate, at the time when the contingencey did happen, by the death of John Chaplin, the younger, are entitled to partition and an account of the rents and profits.
6. That the same conculsion results, if the limitation over to William Chaplin be held good U~Ofl any ground ; for in any case, the limitation was of contingent interest, and no estate vested until the contingency happened; and the complainants were, at that time, heirs-at-law of William Chaplin, in like manner as they were heirs-at-law of John Chaplin the elder.
`7. That the decree is, in other respects, contrary to the rules of Law and Equity.
O'NEALL, J.
I agree with the Chancellor, that the will of Benjamin Chaplin, the elder, of St. Helena Parish, was sufficiently attested to pass real estate, and that under it John Chaplin, the elder, took an estate in fee simple, determinable on his dying under the age of twenty-one years without issue. This position was settled in the case of Scanlan v. Porter, 1 Bail. 427.
*Upon the other parts of the case, I propose to consider, discuss and decide, First, the doctrine upon which the decree is based, that a fee conditional in the testator's heir is merged in the p0551-bility of reverter, which it presumes to be cast by descent upon him Secondly, the estate which John Chaplin the younger took under the will of his father, John Chaplin the elder. -
1. Merger is defined to be, whenever a greater estate and a less coincide and meet in one and the same person withoat any intermediate estate, whereby the less is immediately annihilated, or is said to be merged, that is, sunk, or drowned in the greater, 3 Co. Lit. (by Thomas, *189 Am. Ed.) 655, 338 (a) note K. Taking this definition, it will be necessary to ascertain, 1st, the nature and extent of an estate of fee conditional ; 2d, of the possibility of reverter. It seems to be agreed by all the books that a fee conditional is a fee simple. Some of them say it becomes so for certain purposes, upon the birth of issue, and others, that it is so before issue born. The latter is I think the better opinion ; the estate is defeated if the tenant dies without heirs capable of taking per formam doni ; but as long as he lives, the possibility of issue prevents his estate from being cut down from a fee simple to a less estate. If he alienes after issue is born, they cannot defeat his alienation ; for they must take as his heirs or not at all, and hence they cannot dispute his feofment. Littleton says, “ a man cannot have a more large or greater estate of inheritance than a fee simple.” Upon which Lord Coke remarks, “this doth extend as well to fees simple, conditional and qualified, as to fee simples pure and absolute. For our author speaketh of the ampleness and greatness of the estate and not of the perdureableness of the same ; and ’he that hath a fee simple conditional or qualified, hath as ample aud great an estate as he that hath a fee simple absolute; so as the diversity appeareth between the quantity and quality of the estate.” 1 Co. Lit. (by Thomas, Am. Ed.) 583, 18 (a). From this it would seem, that the only difference between the two estates, is as to the possibility of duration, but that as to quantity they are the same. The fee is in the tenant in fee conditional, subject to be divested on his death without heirs *of his body ; but it is an estate which descends from him to the heirs of his body. The same doctrine is repeated in Plowden : in the argument of the Sergeants, it is said, and not denied, “ And as to the common law before the statute, there was but then one estate of inheritance, and that was a fee simple, but these fee simple estates were in two manners, the one a fee simple absolute, the other conditional. The fee simple absolute was, when land was given to a man and to his heirs; the other, to the heirs of his body, which was also a fee simple, but in this last estate there was a condition annexed to it, that if he died without heirs, the land should revert to the donor.” Plow. 235. Dyer, J., speaking of the fee conditional, says, “ But (as I take it) it was a fee simple presently before issue ; but the having of issue made it more full and perfect than it was before.” Plow. 250. From these authorities, it seems to be clear, that the whole estate is in the tenant in fee conditional, and that no estate is left in the grantor. In other words, the tenant has a fee determinable upon his dying without leaving heirs of his body ; and dying — leaving heirs of his body — descendible per formara doni, and not generally. This view is sustained by 1 Co. Litt. 527, 22 a., and 2 Co. Litt. 22 141 b. note M. This brings us to inquire, what is the possibility of reverter ? Is it an estate ? I think not. For it has nothing like an estate about it. — It is neither a present nor future right. It is a mere possibility. — Upon the happening of a condition the right may arise; but until then it is nothing but the mere remembrance of a condition upon which a present estate may be defeated, and a future one arise in any one who may be in esse and claim as heir to the donor. In the argument of Anthony Brown, one of the judges in C. B. in the case of Willion vs. Berkley, speaking of the reversion under the stat. de donis *190 conditionalibus, it is said, “ For although the land should revert to the donor, before the act, this is no proof that he had a reversion, for an absolute fee simple shall escheat to the lord at this day, and yet the lord has no reversion. So the reverter of the land to the donor upon condition in-daw, does not prove that the donor had a reversion; for indeed *he had no reversion, but the donee had the fee simple, and consequently the whole estate.” Plowd. 247. This opinion of Brown, (who is described by Plowden, at page 356, to have been a judge of profound learning and great eloquence,) contains the substance of all the learning on the subject, and shows most clearly that the possibilty of reverter is not an estate. It is, as he intimates, more like an escheat in possibility than any thing else. Land may escheat for the want of heirs in the tenant in fee; but this possibility is no estate. So land may revert to the donor, on the failure of heirs of the body of the tenant in fee conditional; but until it occurs, there is neither right nor possession, to be holden or inherited. It however is said, it can be released. This is true, and yet it does not follow that it is an estate. A condition, as was very properly said in the argument, may be released, and this is exactly what is done, when the possibility of reverter is released. The condition upon which the land is to revert to the donor, is destroyed.
If these views be correct as to the nature of the estate of the fee conditional and of the possibility of reverter, there can be no such thing as the merger of the one in the other. For the fee conditional during its continuance is the entire fee simple estate, and the possibility of reverter is nothing but a mere possibility, which may or may not become an estate in the donor. But the doctrine of merger is put upon the footing of an implied surrender, and can therefore exist in no case in which the actual surrender would not be lawful. Now, I take upon me to say in opposition to the opinion of the Chancellor, for which I entertain the highest respect, that there could be no surrender by the tenant of the fee conditional, to him, who has the possibilty of reverter. He might after issue born convey it to him, and his conveyance would carry the fee, because he has the whole estate, and may grant it. Surrender is defined to be, “ a yielding up an estate for life, or years, to him that hath an immediate estate in reversion or remainder, wherein the estate for life or years, may drown by mutual agreement between them.” 2 Co. Litt. (Am. Ed.) 648. Upon this the editor remarks in note (B.) “ To make a surrender *good, the person who surrenders must be in possession, and the person to whom the surrender is made, must have a greater estate immediately in reversion or remainder, in which the estate surrendered may merge ” The objections arising out of this law of surrender, as applied to a surrender by tenant of the fee conditional to him who has the possiblilty of reverter, are — 1st. The estate to be surrendered is the whole fee, and that to which it is to be surrendered is no estate at all: — 2d. The person to whom the fee conditional is to be surrendered, has no immediate estate either in reversion or remainder. For whatever may be his interest, it is only to take effect and commence after the death of the tenant in fee conditional without issue. These objections it. appears to me conclude the question, so as not to admit of a doubt. But in 2 Co. Litt. 651, it is said “ Littleton putteth his case *191 of surrender of an estate in possession, for a right cannot be surrendered.” The possibility of a reverter is a mere right, at most, and if it could not be the subject of surrender, it cannot be of grant, devise or inheritance. For nothing can be surrendered, which cannot be conveyed. The possibility of reverter is this mere floating right of possibility.' — It cannot be any thing with which an estate can unite. But the doctrine of merger cannot exist, so as to merge the fee conditional in the heir-at-law, in the possibility of reverter, which, it is said, the law also casts on him. To examine this as it should be, it is necessary to be satisfied, first, whether there is any such thing as a descent cast of the possibility of reverter. We have seen that it is no estate, and unless it is, it cannot be inherited. The possibility of escheat to the lord 'paramount, in England, never was supposed to be inheritable. It is an incident of the estate granted, and upon failure of.heirs, the land re-vests in the lord upon office found. In the fee conditional, this land reverts and re-vests in the donor or his heirs, the moment there is a failure of heirs of his body, by .operation of law. Until this occurs, there is nothing to inherit. If it is inheritable, then it may be devised ; for, whatever is the subject of inheritance, is the subject of devise. If that is so, the devise over to William is a devise *of the possibility of reverter, and it would not have descended to John, the heir and tenant in fee conditional. — But it cannot be devised. For an executory devise over,- after a fee conditional, is too remote and cannot take effect, unless it be acccompanied with such words as will restrict the failure of the heirs of the body, to a dying without leaving issue, at the death of the first taker. Mazyck v. Vanderhorst, decided February Term, 1828, at this place, If it cannot be devised, it cannot be inherited, seems to be the necessary consequence.
Admit the doctrine of merger, as contended for in this case, and it destroys the estate of free conditional, whenever it is devised to the testatator’s heir at law. Such could not have been the understanding of Bracton, Flota and all the early sages of law, when they give instances of fees conditional in the eldest son. If the doctrine of merger is correct, they must have known that this made the estate a fee simple absolute, by the union of the conditional fee and the possibility of reverter. Their silence upon such a doctrine, is the strongest evidence that no such union could take place. The case of Goodright v. -2 Wils. 29, is a strong and direct authority against the doctrine of merger. The testator, George Paynter, devised to his son, George Paynter, in the following words, “I give and devise the samecopyhold and freehold, hereditament and premises, unto my said son, George Payner, his heirs and assigns forever ; but if he, my said son, Geor-ge Paynter, shall happen to die before he shall attain his said age of twenty-one years, leaving no issue living at the time of his death, then I give and devise the said premises unto my said mother, Catharine Paynter, and to her heirs and assigns forever.” George Paynter, the son and devisee, survived his grandmother, who was entitled to the estate in remainder by way of executory devise ; he was her heir-at-law — he died before attaining the age of twenty-one years, and without leaving issue. It was held by Willis, Clive and Birch, that his estate did not merge in the executory devise to his grandmother on her death and the descent cast on him as her heir-at-law, but that the estates were dis *192 tinct — bis *determinable upon a contingency not yet happened, and hers purely contingent and depending upon the contingency on which his estate was to be defeated, and that upon his death without heirs it descended to her heirs then living, and not his. If merger of an estate depending upon a condition as to its duration, in the descent of another estate, which depended on the determination of that estate as its commencement, ever could apply, it would have been allowed in that case. It was however there overruled, as it must be here.
2. This brings me to the consideration of the second part of the case. What estate did John Chaplin, the younger, take under the will of his father, John Chaplin the elder? The words of the devise, are, “I give and bequeath to my dear and loving son, John Chaplin, my tract of land on Port Royal Island lying on Jericho Creek, but if he should die without an heir lawfully begotton by him, then I will aud devise, that the said tract of land be given to my brother, William Chaplin.”
The first thing necessary to be disposed of, is the limitation over, by way of executory devise, in favor of William. If that be good, then it might have a material effect on the decision of the main question. But if it be too remote, as I think it is, then we shall disembarrass at once the case of a question which might otherwise interpose great difficulties to a right conclusion on the nature of the estate to John Chaplin. On this part of the case, I am spared a great deal of labor, by the case of Mazyck v. Vanderhorst. (a) The words of the limitation over there, were, “provided nevertheless, that should my said daughter, Elizabeth Collins, depart this life leaving no laioful heir or heirs of her body, then my will is that the above mentioned remainder of my estate, both real aud personal, I give unto my daughter Mary Woodbury’s eldest son, that shall be named Josiah Collins.” This Court held, “ that this must be regarded as a limitation over after an indefinite failure of issue, and therefore too remote and void.” That decision concludes the question now made, and on *its authority, the limitation over here must be also adjudged to be remote, and void.
Is the estate devised to John Chaplin, a fee conditional at the common law ? It is admitted, that on the face of the devise it is not to him and the heirs of his body. But it is said, that the words, “ but if he should die without an heir lawfully begotten by him, then over to William,” authorize us to imply a fee conditional. I admit, as I did in the case of Bedon v. Bedon, 2 Bail. 246, that these words would, in England have raised an estate tail by implication. But I deny that the same words will imply an estate in fee conditional. Show me a case, if it is to be found, in which such an implication has been made. None can be found. The estate in fee conditional stands at common law, upon the words “heirs of the body.” We are then unfettered by precedents on the subject, and we are free to adopt or reject the implication, as may best correspond with the analogies of the law of this State. The cases under the statute de donis conditionalibus, in which the Judges have, from such words, implied an estate tail, do not ex vi termini compel us to adopt them as authorities for the implication of a fee conditional. There the implication has been resorted to, to favor the intention of the testator— *193 here, nine times out of ten, it would be resorted to, to defeat it. The ease of Bedon v. Bedon has settled the rule, that the same words which in England, will imply a fee tail, will not necessarily imply a fee conditional here ; and I am prepared now to go one step further, and to say, that in no case shall a fee conditional be raised by implication. I regard the whole doctrine of implied estates, where no words are used giving directly to the issue, as an interpolation of the will of the Court, for the will of the testator.
The question, of what estate does the devisee take under a will, is always, what estate do the words legally inform us the testator intended he should take ? If we ascertain this, there is nothing generally to prevent us from giving it effect, When the testator uses words which show an intention to contravene the law, his intention cannot* so far prevail This is the reason why devises, intended to create a perpetuity, cannot take effect. The rule, that a limitation over must take effect within a life or lives in being and twenty-one years and nine months after, was intended to prevent perpetuities, and all devises are compelled to bend to it.
The devise over in this ease being too remote and void, can have no effect to enlarge or restrict the estate, unless it be to aid us in giving construction to the will, as to the estate of John Chaplin. A devise to A. without words of inheritance or perpetuity, or words clearly indicating an intention that he should take more than a life estate, was held formerly to give only a life estate. Take this to be the rule applicable to the will before us, and what estate does John Chaplin take ? I answer he takes a fee simple absolute. For the testator has used words which, in legal contemplation, mdan that the land should not go over to the remainder man, only upon an indefinite failure of issue, and then that it should not revert to him. These words are equivalent to a grant of the fee to him, and as much import a fee simple, as if he had used the word “ forever,” which is. a word of perpetuity, and so are the words employed.
But strike all the words out'after the words “ Jericho Creek,” for they are void as a devise and the devise then stands simply as a devise to John Chaplin without words of inheritance or perpetuity. What estate does, he then take ? The act of 1824 enacts, that “no words of limitation shall hereafter be necessary to convey an estate in fee simple by devise, but every gift of land by devise shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator, express or implied.” This act settled a rule of construct which had been a vexed question in our Courts ; and wills made long anterior to its passage, were subjected to the rule established by it, as will be seen by referring to the cases of Dunlap v. Crawford, 2 M’C. Ch. 171; Hall v. Goodwyn, 4 M’C. 442; Smith v. Peyton, Ib. 476; and Bedon v. Bedon, 2 Bail. 231. The will, in the case of Hall v. Goodwyn, was executed I think, during or before the revolutionary* war. The rule is now regarded as a settled rule of construction — settled by the Legislature and the Courts, and is applicable to all wills, no matter when executed.
The case of Skimon v. M’Roberts, 1 Wash. Rep. 125, shows that the Court of Appeals of Virginia felt themselves bound to enforce the com mon law in the construction of a devise without words of inheritance or perpetuity contained in a will made before 1181. They seem to. think *194 that the Revolution, and the abolition of the feudal system and the rights of primogeniture, might for the future relieve them from this necessity and enable them to give effect to the intentions of testators. That decision cannot affect this case or the rule which has been adopted under and since the act of 1824. The common law rule was adopted in Hall v. Goodwyn, 2 N. & M’C. 383, without any reference to the effect of the act abolishing the rights of primogeniture, and the same case, 4 M’C. 442, and Smith v. Peyton, when the common law rule was reversed and the rule of the act of 1824 was adopted, put the decision on the ground, that the act was declaratory of what the law was, and that it therefore operated retrospectively as well as prospectively.
There is nothing in the will, either express or implied, which is inconsistent with the construction, that John Chaplin took a fee simple, and this was, I think, the nature and extent of his estate under the will of his father. The purchaser at the sheriff’s sale purchased therefore the fee simple, and the defendants claiming under him are entitled to the land. The complainants’ bill was properly dismissed, and the Chancellor’s decree is affirmed.
Johnson and Earle, Js., concurred.

 Not reported.